ST. LOUIS, IRON MOUNTAIN & SOUTHERN RY. CO. v. BROOKSHER.

Opinion delivered April 20, 1908.

1. RAILROAD—DIVERSION OF WATERCOURSE—DAMAGES.—Though a right-of-way deed conveyed to a railway company the right "to change the watercourses" upon certain land, the company will be liable to the grantor or his heirs if a watercourse was unnecessarily diverted upon the land. (Page 94.)

2. Instruction—Application to Evidence.—It was not error to. refuse to give an instruction not based upon evidence. (Page 96.)

3. Evidence—Opinion as to Damages.—Since a witness may testify his opinion as to the value of land before and after the diversion of a watercourse upon it, it was not error to permit him to testify as to the amount of damage sustained by such diversion. (Page 96.)

Appeal from Marion Circuit Court; *Brice B. Hudgins,* Judge; affirmed.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

1. Having acquired by deed its right-of-way through the land, including the express provision therein of the right to change the watercourses, appellant was not liable to the appellees, the evidence disclosing nothing more than the damage resulting from that change. 47 Ark. 334. This is the right which the company had purchased and paid for; hence the allegation and attempt to prove unskillfulness in the work of constructing the culvert running straight the stream, instead of diagonally, has no place in this case.

2. The court erred in admitting incompetent evidence as to the amount of damages. Witnesses should not be permitted to estimate the amount of damages, but should testify to the conditions and facts, and it is for the jury to draw their own conclusions from these facts uninfluenced by the opinions of witnesses. 71 Ark. 302; 47 Ark. 501; 67 Ark. 375; Sedgwick on Damages, § 1293; Lawson, Expert and Op. Ev. 448; 68 Ark. 224; 70 Ark. 401.

3. The court should have given the first instruction requested by appellant. No one is permitted to allow his damages to accumulate, or to magnify the same by his negligence or failure to take such reasonable precautions as are within his power to minimize the damage. 38 Ark. 357.

*W. S. Chastain* and *Frank Pace,* for appellee.

1. The Walbrink case, 47 Ark. 330, relied on by appellant, supports the appellees' contention, they having alleged and proved an *unnecessary, negligent* and *unskillful* construction of the culvert. The right granted in the deed to make changes in the stream does not confer upon appellant the power unnecessarily and negligently to do. so. No effort is made to

show any necessity for changing the stream so as to throw the water upon appellees' land. The company owed the duty to appellees to make a reasonable expenditure to avoid injuring them. 47 Ark. 340.

2. There is no evidence on which to base the instruction No. 1 requested by appellant, but on the contrary the evidence shows that the damage occurred at the first rise after the culvert was constructed. 47 Ark. 340.

3. Appellant's objection to admission of witnesses' estimates of damages is untenable, and cases cited by it do not apply here. It is not contended that the opinion of a witness given abstractly to a gross amount is competent, but there was in this case a sufficient showing of facts to enable the jury to fix the amount of damages. It was necessary to rely to some extent on the opinions of witnesses, but such opinion evidence was based on a legal foundation. 66 Ark. 498.

McCULLOCH, J. This is an action instituted by appellees, the widow and heirs of W. R. Brooksher, against appellant railway company to recover damage done to their lands, which adjoin the right-of-way of the railroad, by reason of construction of a culvert under the roadbed, whereby the waters of a certain creek were diverted from the original channel and caused to flow over the land in question. They recovered a judgment for damages, and the railway company appealed.

Before the construction of the railroad, W. R. Brooksher and wife, by deed duly executed, conveyed to the company a right-of-way through the land in question, and expressly granted "the right of changing watercourses." The roadbed was constructed diagonally across the creek, and the culvert was built straight through the dump or roadbed, so as to change the course of the stream, and cause it to flow over the land, and make a different channel. The evidence shows that the culvert was skillfully constructed, and is of sufficient size to permit the waters of the stream to pass through.

Is the railway company, under these circumstances, liable for the damage done to the land? The damage was caused, not by any unskillfulness in the construction of the culvert, but solely by reason of the changing of the course of the stream. The evidence shows that the diversion of the course of the

stream could have been avoided, and the consequent injury to the adjoining land obviated, by bridging the stream, instead of putting in the culvert, or by running the culvert with the original course of the stream diagonally through the roadbed. The engineer of the road testified that this could have been done.

But, after all that is said, the controlling question recurs to the proposition that the damage was caused solely by the diversion of the course of the stream, and whether the terms of the deed gave the railway company the right to unnecessarily inflict damage in that way without compensation to the owner of the land.

Appellees' ancestor expressly consented, by the terms of his deed, to a change in the course of the stream, and it is contended that they are thereby precluded from recovering damage thus inflicted. The company undoubtedly purchased the right to change the course of the stream, but did this give it the right to do so unnecessarily to the injury of adjoining lands?

Appellant relies upon the case of *St. Louis, I. M. & S. Ry. Co.* v. *Walbrink,* 47 Ark. 330, as decisive of the question. In that case Judge SMITH, in delivering the opinion of the court, said: "The diversion of the water-course was expressly authorized by the terms of the deed; and the defendant is not liable for consequential damages resulting therefrom, it not being alleged nor proved that the work was done unnecessarily, or negligently, or unskillfully. No man can maintain an action for a wrong where he has consented to the act which occasions his loss." The difference between that case and this is that it is here proved that the change in the course of the stream was caused unnecessarily. It could have been avoided by the use of other practical means of crossing the stream and allowing the water to flow thereunder undisturbed.

In *St. Louis, I. M. & S. Ry. Co.* v. *Harris,* 47 Ark. 340, which was decided about the same time the Walbrink case was decided, Chief Justice COCKRILL said: "No effort was made to show a necessity for so constructing the roadbed as to turn the current of the England and other creeks over the appellee's land, but the company sought to justify its conduct under the appellee's deed for the location of the road, granting among

others 'the right to change watercourses and taking water.' While the grant of a right-of-way to the railroad carried with it a license to do all that was necessary for its proper construction, the company remained liable, nevertheless, for any proximate injury that resulted to the grantor from the want of care and skill in whatever work it undertook in order to effect the construction. * * * If the beds of the streams had been located on the appellee's lands before the road was constructed, and an attempt had been made 'to change the watercourse,' as the deed has it, it would have been incumbent on the company to perform this work so as to inflict no unnecessary injury upon the appellee; and if the right of the company to bring the streams from the lands of others on to the lands of the appellee be conceded, the duty remained upon it of so enjoying that privilege as not to injure the appellee more than would be required in providing a proper channel for the water through the premises."

No effort was made in the trial of the present case to show whether or not the cost of constructing a bridge or trestle over the stream or of running the culvert with the original course of the stream diagonally through the roadbed would exceed the cost of construction over the means adopted. It may be that the cost would be so much in excess of the cost of constructing the culvert in the way it was done that it was not reasonable or practical to require the company to adopt the former mode of construction. But that state of the case was not shown to exist. The engineer merely stated broadly that the company could, if it had seen fit, have let the water through without diverting it by constructing either a bridge or trestle or a culvert running with the stream.

We think the jury were warranted in finding that it was unnecessary to divert the stream so as to cause an injury to appellee's land, and that the company is liable for the damage.

Error of the court is assigned in refusing to instruct the jury that it was incumbent on appellees to "use ordinary care to protect their lands from injury, and that if they stood by and allowed such injury to be done and made no effort to prevent the same" they could not recover. There was no evidence to base such an instruction upon, as it was not shown that they

"stood by and allowed the injury to be done." The evidence shows that the injury was caused by the first rise of the stream shortly after the construction of the culvert. The court properly refused to instruct upon an abstract proposition.

Objection was made to propounding the following question to witnesses for appellees: "Taking the actual value of the land at the completion of the work, supposing the consequences to be known, comparing it with what the value would have been if the flow had remained as formerly, and fixing your damages at the difference, what do you think would have been the damage?" This question was propounded to the witnesses after they had been shown to possess familiarity with the land in question before and since the alleged injury to it and knowledge of its value. In response to the question, each witness stated his opinion as to the amount of the damage. Each also described the land and the character of the injury to it. It is contended that it is not proper to permit witnesses to give opinions as to the amount of damages—that the statements of witnesses should be confined to facts so that the jury may estimate the damages. *St. Louis, I. M. & S. Ry. Co.* v. *Jacobs*, 70 Ark. 401; *St. Louis, I. M. & S. Ry. Co.* v. *Law*, 68 Ark. 218. This contention is undoubtedly sound in principle. But it will be observed that the question was so framed as to elicit the opinion of the witnesses as to difference between the value of the land before it was injured and afterwards. That was the proper measure of damages, and it was competent to prove it in that way. *Little Rock & Ft. S. Ry. Co.* v. *Evins*, 76 Ark. 261; *St. Louis, I. M. & S. Ry. Co.* v. *Ayers*, 67 Ark. 371; *Railway* v. *Combs*, 51 Ark. 324.

In *Railway* v. *Combs, supra,* Chief Justice Cockrill, speaking for the court, said: "Opinions are confessedly admissible to prove the value of the land before and after the construction of the railway; but the extent of the injury is the difference between their values, and that difference is the result reached by the answer to the single question, what damage has the land sustained? It is only a question whether the witness or the jury shall perform the mental process of subtraction, and that can be of no judicial importance so long as the witness is required to show, in advance, such knowledge of the facts as to satisfy the judge that his opinion may be of value, and may

be made to disclose the facts upon which it is based."

The evidence sustains the verdict, both as to liability and the amount of the damage.

Affirmed.