Ark. State Highway Comm. *v.* Hood.

5-3062                                    372 S. W. 2d 387

Opinion delivered November 11, 1963.

[Rehearing Denied Dec. 9, 1963.]

*Dowell Anders, George O. Green* and *Bill B. Demmer,* for appellant.

*John W. Goodson,* for appellee.

Sam Robinson, Associate Justice. This is a case wherein the appellant, Arkansas State Highway Commission, condemned for highway purposes 6.1 acres of land belonging to appellees, Marvin D. Hood and wife. The Commission deposited $2,250.00 in the registry of the court as just compensation. Twenty-seven acres were in the original tract. After the taking 2½ acres were separated by the right-of-way from that part remaining. The case was tried before the court sitting as a jury. There was an award of $12,500.00. The Highway Commission has appealed.

Appellee Hood is engaged in the nursery business and the land involved in this litigation was used to grow nursery stock. On appeal, appellant contends that the

court erred in permitting the introduction of evidence showing the value of the nursery stock independent of the land on which it was growing.

It is firmly established that the measure of damages in this kind of case is the difference in the fair market value of the land before and after the taking. *Arkansas State Highway Commission* v. *Fox,* 230 Ark. 287, 322 S. W. 2d 81; *Arkansas State Highway Commission* v. *Kennedy,* 233 Ark. 844, 349 S. W. 2d 132. In arriving at the before and after value it is proper to take into consideration all those things pertaining to the land that a seller or purchaser would consider in arriving at the market value. *Pulaski County* v. *Horton,* 224 Ark. 864, 276 S. W. 2d 706; *Arkansas State Highway Commission* v. *Carpenter,* 237 Ark. 46, 371 S. W. 2d 535 (October 14, 1963). An exception to this rule is that profits from a business conducted on the property cannot be considered. *Arkansas State Highway Commission* v. *Wilmans,* 236 Ark. 945, 370 S. W. 2d 802 (September 30, 1963).

Here, appellee introduced considerable evidence going to show the number, kind, and value of the various plants growing on the land condemned. There is evidence to the effect that the nursery stock itself was worth $13,370.00, and that the witness for appellee, P. M. Brown, took that value into consideration in arriving at the market value of the land. But it is clear from the witness' testimony that he did not merely add his estimated value of the nursery stock to his estimated value of the naked land in arriving at the market value of the land with the plants in place. The witness testified that he did consider the value of the plants, but that was only one of the things considered in arriving at the market value.

The court had the correct conception of the law, and applied to the facts the proper rule of law for determining damages to be awarded the landowner. In the course of the trial the court said: "All right, let's talk just a moment now about the law. Mr. Goodson, I rather believe the general rule to be this: I think the Court should

know what's on that property. Then I think the Court would be interested in knowing the fair market value of the lands taken, which value can be calculated on the basis of the bare land plus whatever was growing there on the date the land was taken. That is, not what each plant would bring if sold to John Doe, Richard Roe, or Jim Smith, but what a willing buyer interested in this kind of business could walk out there and see all of this, and what he would be willing to give, not being obligated to buy." The court further said: "The best authority was in *Corpus Juris,* a general statement, which statement is made without exception 'it is proper to consider' and I am quoting; 'the valuation of crops, trees, grass, etc., growing on the land, but they cannot be valued separately and apart from the value of the land' that is the end of the quotation. Now, of course, I feel that it might be a factor in considering the over-all subject of land values. A man might, for example, an expert, might want to check his findings against such an element as that, but as a single method of determining the land values, this authority which I think is absolutely in point, says that it is not permitted to follow that procedure."

Appellant concedes that what the court said is a correct declaration of the law, but contends that the court did not apply that conception of the law in deciding the case. We do not find anything in the record which indicates that the court did not follow the correct principle.

Of course, a castle costing a million dollars, built in the desert 100 miles from the nearest habitation may add very little, if anything, to the value of the desert land. But if the land was being taken in a condemnation proceeding the landowner would be entitled to show that a very fine castle was located thereon. Actually, it is conceivable that in some instances structures on the condemned property may cause it to have less market value than if the structures were not there.

Here, it is shown that the highest value of the land was for its use as a nursery; that there were more than

11,000 nursery plants on the property. The jury, or in this case the court, had the right to take into consideration the value of the plants in arriving at the fair market value of the land with the plants located thereon. That is, the price that someone wanting to buy a plant nursery would pay for the land on which the plants were growing. *Shelby County* v. *Adams* (1932), 15 Tenn. App. 66.

Appellant contends also that in reaching a decision in this case the trial court took into consideration testimony that had been excluded on motion of appellant. The witness, Glen Rose, had testified that $50,000.00 for appellee's nursery business was reasonable. Mr. Rose further testified: "You are taking so much of the deeper soil that if it was my nursery I would move off it and start over." Counsel for the Highway Commission made the following objection: "If the Court please, I think at this time I am going to have to object to Mr. Rose's testimony and move that it be stricken because he testified that this $50,000.00 represents Mr. Hood's business. We submit to the Court that that is not a proper area of his appraisal in determining land values, and that if his appraisal is based on this over-all value of $50,000.00, saying as he states it in the record, that that was Mr. Hood's business; it was a going business, and he based his estimation on that, and we move that his testimony be stricken as not being proper, immaterial, irrelevant." The court sustained the objection. Later, in a memorandum of the findings the court said: "The Highway Department moved to strike Mr. Rose's testimony and that motion was sustained; however, their objection went to the attempt of plaintiff to extract an opinion from Rose as to fair market value. Rose could not qualify in this respect and the Court so ruled. His knowledge of this nursery, together with his many years of experience in the business in the same locale certainly qualified him with respect to his other testimony."

That part of the witness Rose's testimony objected to by appellant, which objection was sustained, dealt with the $50,000.00 valuation of the business. In stating that he would move off and start over, Rose was only

emphasizing his opinion of the damages to the property caused by the taking, and his testimony in that respect had no connection with the estimated value of the business.

All in all it appears that there was a fair trial without error. The judgment is affirmed.